John G. Michael
Sherrie M. Flynn
#106107
#240215

**BAKER, MANOCK & JENSEN**
A PROFESSIONAL CORPORATION
FIG GARDEN FINANCIAL CENTER
5260 NORTH PALM AVENUE, FOURTH FLOOR
FRESNO, CALIFORNIA 93704-2209
TELEPHONE (559) 432-5400
TELECOPIER (559) 432-5620

Attorneys for   Plaintiff BERNARD BERRIAN

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| BERNARD BERRIAN,<br><br>   Plaintiff,<br><br>v.<br><br>RYAN M. PERKINS, an individual,<br><br>   Defendant.<br>_____ | Case No.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>DATE:<br>TIME:<br>DEPT:<br>JUDGE: |

Plaintiff BERNARD BERRIAN ("Plaintiff") submits this memorandum of points and authorities in support of his Ex Parte Application for a Temporary Restraining Order ("TRO") during the pendency of this litigation.

**I**

**INTRODUCTION**

Concurrently with his application for a TRO, Plaintiff filed a complaint for bad faith cyberpiracy pursuant to 15 U.S.C. § 1125(d), cyberpiracy pursuant to 15 U.S.C. § 8131(1)(A), and cyberpiracy pursuant to California Business and Professions Code § 17525(a).

///

///

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Plaintiff brings this application for a TRO to prevent Defendant from advertising for sale, selling, transferring or using the domain names www.bernardberrian.com and www.bberrian.com.

## II

## FACTUAL BACKGROUND

Plaintiff is an individual and professional football player in the National Football League ("NFL"), currently with the Minnesota Vikings. (Declaration of Christopher F. Rehnke ("Rehnke Decl."), at ¶2.) Prior to playing football in the NFL, Plaintiff played college football at California State University, Fresno ("Fresno State"). (Rehnke Decl., at ¶ 3.) Entering his senior year in 2003 with Fresno State, Plaintiff was listed as the fifth best senior prospect by ESPN's NFL draft expert Mel Kiper, Jr. (Id.) In the 2004 NFL Draft, Plaintiff was drafted in the third round by the Chicago Bears. (Rehnke Decl., at ¶ 4.) He became one of the Bear's most productive receivers. (Id.) In March 2008, after playing with the Bear's for four seasons, Plaintiff signed a $42 million contract with the Minnesota Vikings. (Rehnke Decl., at ¶ 5.)

Starting at or about the time Plaintiff signed with the Chicago Bears in 2004, he began marketing and advertising his personal name as a trademark, most notably, in association with the sale of autographed football cards and other football memorabilia. (Rehnke Decl., at ¶ 6.) Plaintiff frequently attended, and continues to attend public and private autograph signings, where he autographs hundreds of items with his name. (Id.) In addition, Plaintiff endorses and is compensated for the use of his name as a sponsor for certain goods. Specifically, Plaintiff markets his name nationally as a sponsor for Nike Shoes. He has been a sponsor for Nike since 2004. (Rehnke Decl., at ¶ 7.) Plaintiff also recently signed a contract as a national sponsor for Samsung televisions. (Id.) His likeness and name has appeared in Sports Illustrated and other publications, and Plaintiff appears frequently on national radio and television interviews. It is fair to say that the Plaintiff's name has become widely known nationally as a source for a variety of goods, particularly, sporting goods. (Rehnke Decl., at ¶ 8.)

On or about July 20, 2008, Plaintiff discovered that Defendant RYAN M. PERKINS ("Defendant") had registered the domain names www.bernardberrian.com and

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

www.bberrian.com (the "Domain Names") without Plaintiff's consent. (Rehnke Decl., at ¶ 9.) The Domain Names were registered on or about February 8, 2004. (Id.) Defendant does not currently have, and at no time ever had, any ownership rights or entitlement, or permission from Plaintiff to own, develop or register the Domain Names. (Rehnke Decl., at ¶ 10.) Defendant advertised the domain names www.bernardberrian.com and www.bberrian.com for sale on craigslist. (Rehnke Decl., at ¶ 11, and Exhibit "A" thereto.) Defendant also advertised for sale on Craigslist the domain name of another similarly situated professional athlete who attended Fresno State and became part of the PGA Tour. (Rehnke Decl., at ¶ 12, and Exhibit "B" thereto.)

Upon learning that Defendant registered the Domain Names, Plaintiff, through his representatives, contacted Defendant, and attempted to work out a transfer of the Domain Names informal basis. (Rehnke Decl., at ¶ 13.) Negotiations for transfer of the Domain Names continued for over a year, but broke down when Defendant increased his demands for monetary compensation. Specifically, Defendant demanded $2,000.00 in a cashier's check made payable to him, two football tickets to a Green Bay Packers/Minnesota Vikings football game, and an autographed football signed by Mr. Berrian stating "Ryan, thank you for helping me acquire my websites." (Rehnke Decl., at ¶ 14.) Defendant threatened that unless his demands were met he would transfer the domain names to a "business associate" who is a citizen of the Republic of China thereby making them inaccessible to Plaintiff. (Rehnke Decl., at ¶ 15.)

### III

### LAW AND ARGUMENT

A.  **A Temporary Restraining Order and Injunction are Authorized In this Case.**

Plaintiff seeks entry of a temporary restraining order and a preliminary injunction to preserve the status quo and to prevent further and irreparable loss of right. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). A plaintiff seeking a temporary restraining order or preliminary injunction must establish that he is (1) likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest."

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

*Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). A temporary restraining order is governed by the same general standards as a preliminary injunction, and applications for a temporary restraining order cannot be more rigorous than those for preliminary injunction. *Los Angeles Unified School District v. United States District Court*, 650 F.2d 1004, 1008 (9th Cir. 1981). Plaintiff meets all four criteria for a preliminary injunction and a temporary restraining order.

Further, the Ninth Circuit has developed alternative burdens of proof in these cases, allowing a party moving for a preliminary injunction to meet its burden either by (1) proving a combination of the probable success on the merits and possibility of irreparable injury if the relief is not granted, or (2) proving the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Cassim v. Bowen*, 824 F.2d at 795. These alternative standards reflect the important principle that the greater the relative hardship to a plaintiff, the lower should be its burden to show that it will prevail on the merits. *Brenda v. Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). Plaintiff meets its burden under either test.

**B.  Plaintiff Will Likely Succeed on the Merits for Cyberpiracy in Violation of the Anticybersquatting Consumer Protection Act**

There is a substantial probability that Plaintiff will prevail on each of the causes of action for cyberpiracy set forth in the Complaint. Plaintiff's first cause of action is for violation of the Anticybersquatting Consumer Protection Act, found at 15 U.S.C. § 1125(d), which provides in pertinent part:

> Cyberpiracy prevention.
>
> (1)(A) A person shall be liable in a civil action by the owner of a mark, <u>including a personal name which is protected as a mark under this section</u>, if, without regard to the goods or services of the parties, that person–
>
> (i) <u>has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section</u>; and
>
> (ii) <u>registers, traffics in, or uses a domain name that</u>–
>
> (I) <u>in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark</u>;

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark;

(Emphasis added).

Thus, Plaintiff must prove that (1) Defendant registered or used a domain name that is identical or confusingly similar to a (2) trademark that was distinctive when the domain name was registered or used, and (3) that he did so with the bad faith intent to profit. 1 Clara Ruyan Martin & David B. Oshinsky, *Internet Law and Practice in California,* §3.23a (Cont.Ed.Bar 2009).

1. **The Domain Names Registered by Defendant are Identical or Confusingly Similar to Plaintiff's Name.**

The domain names that Defendant registered are www.bernardberrian.com and www.bberrian.com. Both of these contain Plaintiff's surname "Berrian" and both contain either the initial of, or Plaintiff's entire given name. Thus, the domain names are identical to Plaintiff's personal name.

In the event that the court finds that the domain names are not identical to Plaintiff's marks, they are certainly confusingly similar. The Ninth Circuit applies up to eight non-exclusive factors when determining the likelihood of confusion. *Eclipse Assoc. Ltd. v. Data General Corp.*, 894 F.2d 1114 (9th Cir. 1990). The factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Eclipse Associates* at 1117.

In the context of the web, the three most important factors are (1) the similarity of the marks; (2) the relatedness of the goods and services; and (3) the parties' simultaneous use of the web as a marketing channel. *Interstellar Starship Services, Limited v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002). When this "internet trinity" suggests that confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid a finding of an infringement. *Id.*

///

      a.      **Similarity of the Marks**

Similarity of marks is a crucial factor in a likelihood of confusion inquiry. *See, e.g., GoTo.com v. Walt Disney Company*, 202 F.3d 1199, 1206 (9th Cir. 2000). The entirety of the mark and its overall effect on the public is used to measure the similarity as opposed to a minute comparison of the marks' details. *See, e.g. China Healthways Institute, Inc. v. Wang*, 491 F.3d 1337, 1340 (Fed. Cir. 2007).

Here, the domain names www.bernardberrian.com and www.bberrian.com are identical, or at least very similar to Plaintiff's name. Both contain Plaintiff's surname, and both contain either the initial of, or Plaintiff's entire given name. Although there is no separation between "bernard" or "b" on the one hand, and "berrian" on the other hand, the lack of separation has little impact on the similarity of the domain names to Plainitff's personal name. This factor weighs heavily in favor of a finding of likelihood of confusion.

      b.      **Relatedness of the Goods and Services**

Plaintiff's goods include autographed football cards and other football memorabilia. Additionally, Plaintiff endorses other sports and non-sports products. (Rehnke Decl., at ¶¶ 6, 7.) Currently, the Domain Names are not being used by Defendant but, instead, are being advertised for sale. However, it is likely that any use of the Domain Names by Defendant or third parties would be for the purpose of marketing products associated with sports, football, or Plaintiff. Thus, this factor either weighs in favor of a finding of likelihood of confusion or is neutral.

      c.      **The Parties' Simultaneous Use of the Web as a Marketing Channel**

Currently, as stated, the Domain Names are not being not being used by Defendant but, instead, are being advertised for sale. However, any use of the Domain Names for marketing goods will necessarily use the Web as a marketing channel for the goods. Plaintiff's name and likeness are found throughout the internet. Numerous sites advertise and sell autographed memorabilia signed by Plaintiff. See Declaration of John G. Michael ("Michael Decl.") at ¶ 2. Therefore, this factor, too, weighs in favor of a finding of likelihood of confusion.

Consequently the "internet trilogy" suggests that a likelihood of confusion will

occur between Plaintiff's mark, and Defendant's use of the Domain Names.

### 2. Plaintiff's Name as a Trademark Was Distinctive at the Time that Defendant Registered or Used the Domain Names

Trademarks are generally categorized as fanciful, arbitrary, suggestive or descriptive. A "fanciful" mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned (e.g., Exxon, Kodak). An "arbitrary" mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached (e.g., Camel cigarettes or Apple computers). Fanciful and arbitrary marks are considered to be the "strongest" or most distinctive marks. *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.* 834 F.2d 568, 571 (6th Cir. 1987).

Surnames that are used as trademarks are inherently weak. *See, e.g. E.J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992); *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 104 (2d Cir. 1985). Surnames may be afforded protection upon a showing that they have acquired distinctiveness through secondary meaning. *Abraham Zion Corp v. Lebow* at 104. Secondary meaning is an association made by buyers of the mark with a single source of the product. *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 800 (9th Cir. 1970). To protect a personal name, "the name needs to have reached a level of recognition such that the consuming public would associate the name with a particular source." *Paul Frank Industries v. Sunrich*, 502 F.Supp.2d 1094, 1098 (C.D. Cal. 2007) (holding that PAUL FRANK had acquired sufficient recognition to be protected).

Here, Plaintiff is a football player in the NFL, currently with the Minnesota Vikings, under a contract totaling $42 million dollars. (Rehnke Decl., at ¶¶ 2, 5.) Previous to his tenure with the Vikings, Plaintiff played approximately four years with the Chicago Bears and was one of the Bear's most productive receivers. (Rehnke Decl., at ¶ 4.) Starting at or about the time Plaintiff signed with the Chicago Bears, he began marketing and advertising his personal name as a trademark, most notably, in association with the sale of autographed football cards and other football memorabilia. (Rehnke Decl., at ¶ 6.) In addition, Plaintiff endorses, and is compensated

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

for the use of his name as a national sponsor for Nike, and for Samsung televisions. He has endorsed Nike products since 2004. (Rehnke Decl., at ¶ 7.) His likeness and name has appeared in Sports Illustrated and other publications, and Plaintiff appears frequently on national radio and television interviews. It is fair to say that the Bernard Berrian name has become widely known nationally as a source for a variety of goods, particularly, sporting goods. (Rehnke Decl., at ¶ 8.) Consequently, Bernard Berrian's personal name has reached such a level "that the consuming public would associate" the domain names with him as the source. Therefore, beginning in 2004, Plaintiff's name acquired secondary meaning and is distinctive.

Defendant registered the Domain Names in 2004, and from that time forward attempted to sell the Domain Names. Recently Defendant renewed the registrations. Consequently, Plaintiff's mark was distinctive at the time Defendant registered or used the Domain Names.

3.     **Defendant Registered the Domain Names with a Bad Faith Intent to Profit.**

In determining whether a person has a bad faith intent, a court may consider factors including, but not limited to:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B); *see also* 1 Clara Ruyan Martin, et al., *Internet Law and Practice in California,* §3.23a (Cont.Ed.Bar 2009).

An analysis of the factors set forth above leads to the indisputable conclusion that Defendant registered the domain names in bad faith.

    a.    <u>The Trademark or Other Intellectual Property Rights of the Defendant in the Domain Name.</u>

Defendant has none. This factor weighs in favor of a finding of bad faith.

    b.    <u>The Extent to Which the Domain Name Consists of the Legal Name of the Defendant or a Name That Is Otherwise Commonly Used to Identify That Person.</u>

The domain name is not Defendant's legal name nor is it commonly used to identify him. This factor weighs in favor of a finding of bad faith.

    c.    <u>The Defendant's Prior Use of the Domain Name in Connection with a Bona Fide Offering of Any Goods or Services.</u>

Defendant did not use the Domain Names in connection with any goods or services after he registered them. Instead, Defendant advertised the Domain Names for sale in an attempt to profit from the sale. This factor weighs in favor of a finding of bad faith.

    d.    <u>The Defendant's Bona Fide Noncommercial or Fair Use of the Mark in a Site Accessible under the Domain Name.</u>

Defendant has not made <u>any</u> use of the two domain names he registered. Rather, Defendant advertised the Domain Names in an attempt to profit from the sale. This factor weighs in favor of a finding of bad faith.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

  e. <u>The defendant's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.</u>

 Defendant's intent was clearly to profit from the expenditures of time and money by others, specifically Plaintiff. The actions of Defendant could potentially harm the goodwill of the marks and Plaintiff's name by diverting business from Plaintiff to Defendant or to a third party who may purchase the Domain Names from Defendant. This factor weighs in favor of a finding of bad faith.

  f. <u>The defendant's offer to transfer, sell, or assign the domain name to the mark owner or any third party for financial gain without having used, or having intent to use, the domain name for a bona fide offering of goods and services.</u>

 Defendant offered to sell the Domain Names to Plaintiff, and demanded $2,000.00 in a cashier's check made payable to him, two football tickets to a Green Bay Packers/Minnesota Vikings football game, and an autographed football signed by Mr. Berrian stating "Ryan, thank you for helping me acquire my websites." (Rehnke Decl., at ¶ 11.) While Plaintiff maintains that he did not intend to profit from selling the Domain Names and, instead, intended to develop websites with the Domain Names, the fact that Defendant had registered the name of at least one other similarly situated professional athlete and then attempted to sell that domain name, establishes that Defendant intended to profit from selling the Domain Names. *See, Schmidheiny v. Weber*, 285 F.Supp.2d 613, 627 (E.D. Pa.) (holding that intent is established by defendants' previous conduct of registering domain names of wealthy individuals and then attempting to sell the domain names). Likewise, Defendants intent is also established by his offer to sell the Domain Names to Plaintiff, and then threatening to transfer them to an individual outside of the United States. *See id.* This factor weighs in favor of a finding of bad faith.

  g. <u>Providing material and misleading false content information when applying for the registration of the domain name, intentionally failing to maintain accurate contact information, or prior conduct indicating a pattern of such conduct.</u>

 Plaintiff does not contend that Defendant provided false or misleading information when applying for the registration of the domain names.

///

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

  h. <u>The defendant's registration or acquisition of multiple domain names that the person knows are identical or confusingly similar to marks that are distinctive of such domain names at the time of registration, without regard to the goods or services of the parties.</u>

This is precisely what occurred here. Defendant registered at least two variations of Plaintiff's personal name and trademark. This factor weighs in favor of a finding of bad faith.

  i. <u>The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of 15 USC § 1125(c)(1).</u>

As set forth above, Plaintiff's name is distinctive within the meaning of the statute. This factor weighs in favor of a finding of bad faith.

Because eight of the nine factors weigh in favor of a finding of bad faith, this Court should find that Defendant registered the Domain Names with a bad faith intent to profit .

Each of the elements required to prove cybersquatting has been satisfied. Therefore, Plaintiff is likely to succeed on his cause of action for cyberpiracy in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125 (d).

**C. <u>Plaintiff Will Likely Succeed on the Merits for Cyberpiracy in Violation of 15 U.S.C. § 8131(1)(A)</u>**

A defendant is liable for a cause of action for cyberpirarcy in violation of 15 U.S.C. § 8131(1)(A) if he: (1) registers a domain name; (2) that consists of a name of another living person (or one that is substantially similar); (3) without that person's consent; and with the intent to profit from selling that domain name to the person or third party. 15 U.S.C. § 8131(1)(A) (formerly 15 U.S.C. §1129(1)(A)); see also *Schmidheiny v. Weber*, 285 F.Supp.2d 613, 627 (E.D. Pa. 2003).

Here, Defendant registered the domain names www.bernardberrian.com and www.bberrian.com. (Rehnke Decl., at ¶ 9.) The Domain Names both contain Plaintiff's full surname of "Berrian." Both contain either the initial of, or Plaintiff's entire given name. Thus, the Domain Names consist of the name of Plaintiff, another living person, or are substantially similar to Plaintiff's name. Defendant registered the Domain Names without the consent of Plaintiff. (Rehnke Decl., at ¶ 9.) As demonstrated in section B.3. above, Defendant did so with the intent to

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

profit from selling the Domain Names to Plaintiff or third parties. Consequently, Plaintiff will likely succeed on the merits for cyberpiracy in violation of 15 U.S.C. § 8131(1)(A).

D. **Plaintiff Will Likely Succeed on the Merits for Cyberpiracy in Violation of California Business and Professions Code 17525(a)**

California anticyberpiracy statute provides, in pertinent part:

> It is unlawful for a person, with a bad faith intent to register, traffic in, or use a domain name, that is identical or confusingly similar to the personal name of another living person or deceased personality, without regard to the goods or services of the parties.

Cal. Bus. & Prof. Code § 17525(a).

The California Act uses eight of the nine factors from the federal trademark cyberpiracy act. 4 *McCarthy on Trademarks and Unfair Competition*, § 25:81 (4th ed. 2009). Only the ninth factor differs. Instead of focusing on the distinctiveness of the mark, the ninth factor of the California Act asks whether the person charged with a violation sought or obtained consent from the rightful owner of the name. Cal. Bus. & Prof. Code § 17526 (i); see also 4 *McCarthy on Trademarks and Unfair Competition*, § 25:81 (4th ed. 2009).

The California statute defines "traffic in" as follows:

> "Traffic in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, or any other transfer for consideration or receipt in exchange for consideration.

Cal. Bus. & Prof. Code § 17527(d).

Here, Defendant registered the Domain Names. He also attempted to sell the Domain Names, in exchange for monetary compensation and other consideration. (Rehnke Decl., at ¶ 14.) Consequently, Defendant actions also meet the definition of "traffic in."

As to the "bad faith" factors, Defendant did not obtain the consent of Plaintiff, the ninth factor under California law. (Rehnke Decl., at ¶ 14.) Additionally, as demonstrated in section B.3. above, Defendant met eight of the nine factors for bad faith contained in the federal anticyberpiracy statute (seven of the eight factors contained in the California statute). Therefore it can fairly be said that Defendant possessed the prerequisite bad faith intent. Finally, as demonstrated in sections B.1., and C. above, the Domain Names are identical or confusingly

similar to the personal name of another living person, Plaintiff. Therefore, it is likely that Plaintiff will succeed on the merits on his cause of action for cyberpiracy in violation of California Business and Professions Code, section 17525(a).

### E. The Balance Of Potential Harms Weighs In Favor of Plaintiff

Defendant is continuing to advertise and is attempting to sell the domain names www.bernardberrian.com and www.bberrian.com in violation of Plaintiff's rights. If Defendant is not enjoined from doing so during the pendency of this litigation, Plaintiff will suffer substantial injury in that he may be unable to obtain the Domain Names because they may be sold to third parties. As such, the judgment in the action may be rendered ineffectual. Thus, issuance of a TRO and preliminary injunction under Fed.R.Civ.P. 65(b) and/or Local Rule 65-231 is appropriate.

If Defendant is not enjoined from advertising and attempting to sell the domain names www.bernardberrian.com and www.bberrian.com, Plaintiff may suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill because of the third-party use of his name. Because of the potential of irreparable injury to his reputation and goodwill, pecuniary damages will not provide Plaintiff adequate relief. Further, the damages that have and will be sustained by Plaintiff cannot be readily ascertained or calculated. Thus, issuance of a TRO and preliminary injunction under Fed.R.Civ.P. 65(b) and/or Local Rule 65-231 is appropriate.

In this case, if the TRO and preliminary injunction do not issue, Defendant will be free to continue to advertise and attempt to sell the Domain Names. Denial of an injunction will permit Defendant to profit from Plaintiff's personal name. Meanwhile, Plaintiff may suffer substantial pecuniary losses and irreparable injury to his business reputation and goodwill.

On the other hand, if the TRO and preliminary injunction do issue, there is no adverse effect on Defendant except to prevent Defendant from obtaining additional, unearned profits at the expense of Plaintiff's legitimate business interests.

## IV

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

1  Temporary Restraining Order and an Order to Show Cause for a preliminary injunction to enjoin
2  Defendant from using nearly identical versions of Plaintiff's El Monterey packaging design.
3          DATED: October __, 2009
4                                                                              BAKER MANOCK & JENSEN, PC
5
6                                                                              By: _____
7                                                                              John G. Michael
                                                                            Sherrie M. Flynn
8                                                                              Attorneys for Plaintiff
                                                                            BERNARD BERRIAN
9
10
11  @PFDesktop\::ODMA/MHODMA/DMS;DMS;769557;1
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28